Douglass, J.
Harland H. Edmund brought his action in the court below .■against Edward A.Storer, Joseph Rogers,and Frank Rutherford, to recover from them the sum of two hundred and fifteen ■dollars. This sum, he alleges, was won from the plaintiff •at gaming, and by him paid to defendants, which they now hold to his use. That, by reason thereof, an action has accrued to him under the statute against gaming; for which •sum,and interest, together with a sum not greater than $500, as exemplary damages, he claims judgment against all these parties. He alleges that Storer, and Rogers & Rutherford were partners, under the firm name of E. A. Storer & Company. These parties defendant answer separately,and deny the alleged partnership, and deny generally the averments of the petition.
The cause was tried to a jury, and resulted in a verdict ■for the amount claimed, plus $50. in addition to the $215, •actually claimed, presumably a penalty under the statute as *676 exemplary damages. The verdict is against all of these defendants.
A motion for a new trial was filed and overruled, and error is prosecuted here to reverse the judgment, and numerous grounds of error are assigned, which resolve themselves-into,
First. That the verdict and judgment is against the dear-weight of the evidence, and against the law of the case.
Second. That the court erred in the admission and exclusion of evidence, prejudicial to the plaintiff in error; and-
Third. That the court erred in its charge..
These three assignments of error cover the contention.
The claim of the plaintiff is that his contracts with E. A. Storer & Company were wagering contracts,or transactions;, that Rogers & Rutherford were partners of E. A. Storer &. Company, or, at least, interested in these transactions, in such a way as to render them jointly liable with him; and-that the nature of the business conducted, the mutuality of Rogers & Rutherford and Storer in these transactions with plaintiff, made the same gambling contracts as to all of' them, within the purview of Revised Statutes,sections 4270' and 4271.
The claim of the plaintiffs in error is that, under the issue made, it devolved upon the plaintiff below to prove:
First. That these transactions were gambling transactions; and
Second. That Rogers & Rutherford were partners, and interested in the profits and losses of Storer & Company. That is the special claim that they made respecting the affirmative proof required in order to recover. They claim-a failure of proof by any clear weight of evidence either that it was a bet, wager, or chance, or that a partnership, either direct, or by a holding out, was shown by any competent evidence.
Considerable contention is made in reference to the character of the issue made by the pleadings, viz.: Whether the-action is one under Revised Statutes,sections 4270, or 4271.. A reference to section 4272 will show all that is necessary in order to bring a case within the statutes against gaming. Revised Statute section 4272 is as follows:
“In the prosecution of such actions it shall be sufficient?. *677 for the plaintiff to allege that the defendant is indebted to the plaintiff, or received to the plaintiff’s use, the money so lost and paid, or converted the goods won of the plaintiff to the defendant’s use, whereby the plaintiff’s action accrued to him, without setting forth the special matter.”
I refer to this because it is the section immediately following the two sections which are an inhibition against gaming; and these sections are, presumably, intended to cover broadly the whole subject. The averments, by this section required, are very simple, and it shows that the pleader is not'required to set out 3vith legal exactness and particularity a state of facts which might bring him within one or the other of these sections. A very plain statement of the situation will entitle him to offer evidence, under that kind of averment, of a gambling contract.
The question is (under this evidence): Is a case made under these provisions against gaming? The policy and purpose of the law is to discourage gambling, rather than the natural justice of the case between the parties; and that is the reason, evidently, that the legislature passed section 4272, and they builded wisely when they did, so that no technical particularity is required in order to invoke the aid of either of these sections of the statute.
Under this evidence there can be no dispute but that Harland H. Edmund did deliver to E. A. Storer the sum of two hundred and fifteen dollars as margins upon certain transactions had with him in grain and pork; and that this sum, or any part thereof, has not been re-paid to him. It is beyond dispute that in the late fall of 1898, and continuing up until January, Edward A. Storer was conducting a place of business which was run in the name of E. A. Storer & Company at Newark, Ohio. A volume of evidence is before us relating to the character of these transactions. Were they gaming transactions ? Were Rogers & Rutherford interested in these transactions? If these questions are answered in the affirmative, by competent evidence, then this verdict is right.
The claim is made that this was an absolute purchase' of wheat,corn and pork, to be delivered in kind, actually; and that this was in contemplation of the parties at the time; that Edmund ordered Storer actually to buy these commod *678 Ities; that Storer telegraphed the order to Rogers & Rutht erford at Columbus, aud they, in turn, telegraphed the order to their correspondent in Chicago, and that the grain and pork were actually bought, to be delivered at the time rendered certain. ' If this be true, then this would not be a gambling transaction; it would not be a mere wager upon the price of these commodities.
This is the issue. On this issue, the verdict, we think, is clearly not against the weight of the evidence, It is not necessary to review the evidence upon this proposition, The evidence of Thomas E. Brown alone would justify the jury in its verdict under the well-known rule adhered to by reviewing courts; and we will not review the evidence,because we think it is not only not against the weight of the evidence, but it accords with our own view.
Did the court err in the admission and exclusion of evidence to the prejudice of the plaintiffs in error?
We have carefully gone through this record (and it was a laborious matter to do it), but counsel have aided us’jin classifying the claimed errors, and thus have aided us in our labor. A reference is made to certain classes of the evidence. While different in items and somewhat in character, yet, it is directed to the same legal phase of the case, and that is on the assumption that a strict partnership is required to be proven in this case in order to hold Rogers and Rutherford.
On page 18 of the Record a certain circular is introduced; and conversations with Rogers are introduced.
Page 37 of the Record; Rogers comes to take charge of the office over here at Newark.
On page 39 of the Record Rogers sends telegrams to one man, and then another, and then another, (the names of whom I do not remember, and it is not important,) here at the Newark office, They come, and stay but a short time. He inducts Brown into the office here. >
Record page 45: A general exception as to the conduct of Rogers and Rutherford in Newark,in the conduct of this office, is entered, to cover all these different items of evidence as bearing upon the acts and conduct of these parties, whether it be by taking charge of the office, going to the bank and taking charge of the money; .whether it be by in *679 stalling different men in th© office,' or by their circulars and conversations or not, there was a general exception presumably to cover all of these matters; and there are numerous specific exceptions made in the record touching this contention.
Now, the court, on the claim that was made here, that it became necessary to show a strict, technical partnership in order to hold Rogers and Rutherford jointly liable with E. A. Storer, limited this evidence, and limited it strictly; because the court did not go so far as to say that if a prima facie partnership were established, that then the acts and conduct of these parties might be received to strengthen that presumption, as is laid down by abundant authority; the court did not even go that far in reference to that, but held that knowledge must be shown, and authority must be shown positively, in order to have the effect of establishing a partnership, to hold these parties.
The declarations of Storer, standing alone, would not prove a partnership with Rogers and Rutherford; and the court, as I have said, did not admit it for such purpose; but when a partnership is prima facie established, the conduct and acts of each are properly received in evidence against all to strengthen the presumption.
There is plenty of respectable authority to sustain that proposition, and we think it is a very salutary rule. Otherwise, partnerships, which are a sort of mixed question of law and fact, would be very difficult to establish, if you could not bring to your aid such items of evidence as that, after you have your prima facie case established by other evidence.
Rogers & Rutherford admit that they furnished him (Storer) with a wire and with quotations; executed his orders, and received a commission. To this, superadd their acts and conduct, detailed by Brown and others, such as-taking charge of the cash here in the bank and in the office, and measure it over the statute, and the jury, on all this evidence, made them liable. Hence, the evidence admitted and excluded, which is criticised because it is claimed not to be strictly relevant to establish a strict partnership, is-not required to be put to any such test, Were they interested in this transaction, under these statutes?
*680 The case of Vincent v. Taylor, 60 Ohio St., 309, we think is important in this contention. We have examined the case of Lester v. Buel, 49 Ohio St., 240, and the case of Kahn v. Walton, 46 Ohio St., 195. In Vincent v. Taylor, supra, in respect to this question, in which it is sought to make a distinction between section 4270 and 4721, Judge Bradbury says:
“There are two sections of our statutes under which money lost at gambling, or expended on account of gambling may be recovered, sections 4270 and 4271. The former section is in the following terms:
“If any person, by playing at any game, or by means of any bet or wager, loses to any other person any sum of money or other thing of value, and pays or delivers the same, or any part thereof, to the winner, the person who so loses and pays, or delivers may, at any time within six months next after such loss and payment or delivery, sue for and recover the money or thing of value so lost and paid or delivered, or any part thereof, from the winner thereof, with costs of suit, by civil action founded on this chapter, before any court of competent jurisdiction.”
That, of course, is 4270, which, in terms, covers the situation in which there is a contest specifically between a winner and a loser.
Citing the next section in full, the court proceeds then to state what the operation and scope of these sections are:
“The operation of section 4270, Revised Statutes, is confined to instances where, by playing some game, or by some bet or wager, one person has won of another, money or other thing of value, and the action it authorizes is to be directed against the winner.”
Coming to section 4271, Revised Statutes,the court says:
“And it seems clear that its chief object was to provide a remedy for other instances of money lost at gaming than was afforded by the earlier section, by reaching a class of persons who, although they did not participate in a game played for money, etc,, nor were parties to a bet or wager, nevertheless, promote the evil of gaming by affording the means by which schemes or games of chance for money could be indulged in or played by others,” In distinguishing here between these sections, where the husband had not *681 brought an action and the wife did,he says: “The averments •of the petition manifest an intention on the part of Mrs. Taylor to invoke the provisions of the latter section (4271) of the statute. ” So, it is not essential that there should be any technical particularity in pleading to invoke either of these sections. All that you need aver are those plain averments, that the other fellow has the money, and that it is due you; and that it arose out of a gambling transaction, and under these averments you make a case which comes within the purview of this legislation against gambling. The legislature had a purpose in that, and their purpose was, that a gambling transaction might not escape because of the fact of some failure in legal precision and exactness in pleading.
The averments of the petition, we think, are as well referable to and can as well invoke section 4271 as 4270.
These persons were all made parties defendant,and whether this evidence stamps them as winners of his money, or promoters or backers of the game in which he lost, makes no difference. If Rogers and Rutherford backed the business, and did not participate except to furnish the instrumentality or means by which Storer and Edmund operated, they are liable. We are of the opinion that this- evidence, as directed to the issue that was necessary to be made here, viz: that these parties were promoters and backers and interested in this matter, was all competent; and even if some of it would not subscribe to the test of relevant evidence to establish a strict partnership, it is not objectionable under the allegations made in the pleadings and the character of this issue. We are of opinion that there was no error in excluding or admitting evidence.
The charge of the court is the only other matter in this ■case, and we will make reference to that.
Two special exceptions only are taken to the charge of the court, and there is a general exception. We have read ihe whole charge,and we think it responds to this case, and there is no error in the general exceptions to the charge, or in fact otherwise.
The court says: “Now, the question is; what those transactions were, whether they were gaming transactions or not. That is, that is the first question; and then the next ques *682 tion is whether Rogers and Rutherford had an interest in< those transactions. If they were gaming transactions, Storer would be Háble at all events. If they were gaming transactions, then Rogers and Rutherford would be liable if they had an interest in those transactions And the burden of proof, Gentlemen, is upon the plaintiff to satisfy you, by a preponderance of the evidence, that this transaction with the plaintiff, or these transactions, because there were several of them, with the plaintiff, were gambling transactions;, and, in order to hold Rogers and Rutherford,that they had an interest in the transactions.”
We think the court charged correctly. The criticism upon this is that there should have been a charge that the-issue or fact must be established that there was ah actual partnership between these parties in older to hold them. That is not contemplated at all in order to make these parties liable,as we view the law under sections 4270 and 4271, and the character of the issue that may be made under section 4272. The court took that view of it. He says it must be shown by competent evidence that they were interested in those transactions. A party need not participate at all, but simply furnish the means and instrumentality by which the other parties act. If so, he is liable.
The next portion of the charge excepted to is:
‘‘Now, it is said upon one side, that it was the absolute-purchase of wheat, or corn, I think it is, and in the other-transactions the absolute purchase of pork, to be actually-delivered in the contemplation of the parties, and that if was nothing else. It is said that Edmund bought so much corn, or so much pork, or ordered Edward Á. Storer to buy-so much corn and so much pork for him, and that Storer telegraphed that order to Rogers and Rutherford at Columbus, and they telegraphed the order to their correspondent in Chicago,and that the porkand'corn were actually bought. Of course, this was pork and corn to be delivered in the future, perhaps two or three months from that time, and no delivery, that is, no immediate delivery was contemplated, but it was contemplated to be delivered in the month in which they bought it. Now, if it was that kind of a transaction, if a delivery at the time specified, that is,at the time agreed upon, was contemplated by the parties, it would be *683 a legitimate transaction, and it would not be a gaming transaction at all.”
That states the proposition exactly as we understand the law in the 46 and 49 Ohio St.
‘‘But if the transaction merely was in the fo-m of a legal transaction, but really both parties intended that there should not be any delivery of the stuff itself, but at any time when Storer should order the stuff to be sold they should settle the differences according to the market price, then it would be a gaming transaction' under the laws of Ohio.”
And the court, while not in the exact language, follows exactly the rule prescribed by the supreme court in that statement.
‘‘And it would not make any difference, Gentlemen, how many parties’ hands it went through in order that it might be a gaming transaction, and it would not make any difference either that the final transaction was consummated upon the Board of Trade in Chicago. If it was that kind of a transaction between these parties, in which it was not contemplated that any corn or pork should be actually delivered, but that they should settle the differences, whenever the plaintiff wanted to sell it, by the difference in the market price, that would simply be a wager upon the price of the stuff bought, and not an honest, legitimate transaction.”
We think there is no error in this charge. It is not against the weight of the evidence. That the evidence, for the purpose of establishing the facts essential to make these parties liable, as contradistinguished from a partnership, was all competent. That the court charged the law as laid down by our supreme court and properly interpreted the statutes, and that there is no error in this regard.
Ordinarily, of course, when a party enters into a gaming contract, in violation of the laws- of the state, and stakes his fate on the doctrine of chances,and loses, and brings an action because he had lost (which, of course, he would not have done if he had won), it does not present a state of facts that comes to the court with any particular favor. But this is not any unmanly, puerile plea by this man. - He simply put his money in there, and they have it. He is *684 here asking that he get back his money that they have, and which he paid them, The court is of opinion that there is no prejudicial error in this record, and the judgment is affirmed.
E. L. Hyneman and J. B. Jones, for Plaintiff in Error.
Kibler <te Kibler and S. M. Hunter, for Defendant in Error.
Pi ote — E. L. Hyneman, for Plaintiffs in Error: It was necessary for plaintiff to establish against Rogers and Rutherford:
First. That there was a partnership relation between Rogers and Rutherford; or:
Second. That Rogers and Rutherford were interested in the profits and losses of the transactions between E. A. Storer and Co. and the plaintiff.
Third. That these transactions were gambling contracts.
Plaintiff was not warranted in relying upon a statement of Brown which was but Brown’s, “constructive” understanding of what Rogers said.
“Where evidence of an act done by a party is admissible, his declarations made at the time having a tendency to elucidate or givo character to the act and which deríve a degree of credit from the act itself, are also admissible as a part of the res gestae.” Wetmore v. Mell. 1 Ohio St., 28, 15 O., 284-285.
The statute is clear upon the proposition that mutual intent must exist before a transaction, apparently legal, becomes illegal. “Buyer and seller shall both agree to do the prohibited act.” Sec. 6934a2 R. S. 8 Am. Eng.Ency.of Law, 1009, 1st Ed.
In making proof of the nature of the transactions in this case, the nature of the business of defendants below and the usual course of that business, may be shown. Bradley v. Tel. Co. 9 Bull., 224; 8 Am. Eng. Ency., 1010, Note 2.
Plaintiff is seeking, not to collect a debt, but to recover under the statute money placed in someone’s hands on a wager. It is not money lost on a wager, as he really won, It is the actual wager itself which he seeks to recover. In an action for any kind of tort, the doctrine of holding out has no application. Lindley on Part, 47.1
The doctrine of holding out is but an application of the law ■of estoppel. The oreditor has given credits because of the acts or words of a supposed partner. Therefore, as the former has given credit because of the acts or words, the person responsible for them is not permitted to deny their natural import. Palmer v. Pinkham, 37 Me. 252.” Story on Part., 160; Parsons on Part., 413. 2 Beach on Contracts, p. 1916; Hooker et al. v. Palos, 11 C. S. C. R., 369,
The presumptions are all on the side of legality. 8 Am. Eng. Ency., 1010, note 1.
Making purchases through a broker by depositing margins is rot proof of illegality. 8 Am. Eng. Ency. of Law, 1008.
The fact that if the customer failed to keep the margin good, *685 defendants below sold the commodity is no evidence of illegality. 23 Am. Eng. Ency. of Law, 710.
The contemplation of a possibility, of settling by differences is not sufficient to make a contract illegal. 8 Am. Eng. Ency. of Law, 1006.1
The fact that the broker buys the commodity for the customer but in his own name, and holds the commodity himself, does not make the transaction illegal. 8 Am. Eng. Ency. of Law, 1013; 23 id. (pp. 702, 708).
Dealing in grain and provisions for future delivery; even where the broker has no stook on hand and no means of performance except by purchase upon the market when the contract matures, is not gambling. Kahn, Jr. v. Walton, et al., 46 Ohio St., 204; Lester v. Buel, 49 Ohio St., 250.
Subsequent settlement by differences between the price when contract matures and the price as the date of contract is not in itself proof of illegality. Bradley v. Tel. Co., 9 Bull., 224.
Nor does the contemplation of the possibility of suoli a settlement make the contract illegal. 8 Am. Ency. of Law (1 ed.) 1006.
Kibler & Kibler, for Defendant in Error: The legitimacy of the transaction depended upon whether or not there was to be actual delivery and whether that was within the contemplation of the parties. Where intention or state of mind is competent, a witness is permitted to testify to his own state of mind. 42 Onio St., 41; 22 B., 9; 1 C. C., 76; 37 Ohio St., 194; 3 Ohio St, 377, 385; 10. C., 5.
Circumstances were admissible tending to show Rogers & Rutherford’s connection with the business of E. A. Storer & Co.; their assumption of the control of this business when Storer broke up was one of the facts tending to show their connection with the firm, in connection with various other facts, such as their statements; the fact that all the money taken in by Storer and Company was deposited in the city of Newark in the Franklin Bank in the name of Rogers & Rutherford; that Rogers & Rutherford made all the checks against the fund in the bank; the admission that Roger» & Rutherford pot a commission on all the business of E. A. Storer and placed that business in the Chicago Board of Trade &c.
Where the prima facie partnership is made out, as in this case such declarations become competent. 40 Ohio St., 14; 2 Ohio 61; Jones on Evidence sec. 252; Greenleaf on Evidence Vol. 1 p. 207,Vol. II, 484; Bates on Partnership sec. 90; 1 Bindley 43 and 44.
It is admitted by both of the principal partners Rogers and Rutherford, and Storer, that Rogers & Rutherford furnished him with wire, with quotations and executed all bis orders, and were paid a commission for so doing. These admissions alone were sufficient to establish the liability of Rogers & Rutherford independent of any partnership arrangement and fully sustained the charge of the court in the respects excepted to. Seo. 4271, R. S.
It was not material for the plaintiff to show that there Was any partnership agreement other than suah connection between Storer and Rogers & Rutherford,as their own testimony showed, in order to make Rogers & Rutherford liable to the plaintiff in this case.